IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION

| | | |
|---|---|---|
| TAMMY SUMNER, | ) | |
|     Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:10cv00029 |
| | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, | ) | |
|  **Commissioner of Social Security,** | ) | By: PAMELA MEADE SARGENT |
|     Defendant | ) | United States Magistrate Judge |

*I. Background and Standard of Review*

Plaintiff, Tammy Sumner, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), determining that she was not eligible for disability insurance benefits, ("DIB"), and supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. §§ 423, 1381 *et seq.* (West 2003 & Supp. 2010). Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as

1

"evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Sumner protectively filed her applications for DIB and SSI on April 20, 2007, alleging disability as of October 26, 2006, due to carpal tunnel syndrome, multiple back problems, depression, chronic pain, fibromyalgia, arthritis, high blood pressure, thyroid problems, high cholesterol, possible diabetes and neuropathy. (Record, ("R."), at 91-95, 96-102, 120, 189.) The claims were denied initially and on reconsideration. (R. at 54-59, 60, 61-63, 64-65.) Sumner then requested a hearing before an administrative law judge, ("ALJ"). (R. at 67-68.) The hearing was held on September 9, 2009, at which Sumner was represented by counsel. (R. at 26-48.)

By decision dated October 26, 2009, the ALJ denied Sumner's claims. (R. at 8-24.) The ALJ found that Sumner meets the nondisability insured status requirements of the Act for DIB purposes through December 31, 2012. (R. at 10.) The ALJ also found that Sumner had not engaged in substantial gainful activity since October 26, 2006, the alleged disability onset date. (R. at 11.) The ALJ determined that the medical evidence established that Sumner suffered from severe impairments, including obesity, degenerative disc disease of the lumbosacral spine, history of carpal tunnel syndrome, status post carpal tunnel release of the right wrist in April 2007, and an adjustment disorder with depressed and anxious mood,

but she found that Sumner did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 11-18.) The ALJ found that Sumner had the residual functional capacity to perform simple, routine, repetitive, unskilled, light work[1] except that she was limited in pushing and pulling in her upper extremities to the weights she could lift and carry, she could never crawl, she could only occasionally use ramps, climb stairs, balance, kneel, stoop and crouch, and she could not tolerate work around hazardous machinery or at unprotected heights, climbing ladders/ropes/scaffolds or being on vibrating surfaces. (R. at 19-22.) Therefore, the ALJ found that Sumner was unable to perform her past relevant work as a insurance processor, a clerk or a cashier. (R. at 23.) Based on Sumner's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that a significant number of other jobs existed in the national economy that Sumner could perform, including jobs as a line attendant, a gate attendant and a messenger. (R. at 23-24.) Thus, the ALJ found that Sumner was not under a disability as defined under the Act and was not eligible for benefits. (R. at 24.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (2010).

After the ALJ issued her decision, Sumner pursued her administrative appeals, (R. at 90), but the Appeals Council denied her request for review. (R. at 1-4.) Sumner then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481 (2010). The case is before this court on Sumner's motion for summary

---

[1]Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If an individual can do light work, she also can do sedentary work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) (2010).

judgment filed October 25, 2010, and the Commissioner's motion for summary judgment filed January 13, 2011.

## *II. Analysis*

Sumner was born in 1967, (R. at 91, 96), which classifies her as a "younger person" under 20 C.F.R. §§ 404.1563(c), 416.963(c). Sumner graduated from high school. (R. at 126.). Sumner has past work experience as an insurance clerk, a bank teller and a cashier. (R. at 134.)

The Commissioner uses a five-step process in evaluating SSI and DIB claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2010); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. §§ 404.1520, 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a) (2010).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age,

education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B) (West 2003 & Supp. 2010); *see also McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated October 26, 2009, the ALJ denied Sumner's claims. (R. at 8-24.) The ALJ found that Sumner meets the nondisability insured status requirements of the Act for DIB purposes through December 31, 2012. (R. at 10.) The ALJ also found that Sumner had not engaged in substantial gainful activity since October 26, 2006, the alleged disability onset date. (R. at 11.) The ALJ determined that the medical evidence established that Sumner suffered from severe impairments, including obesity, degenerative disc disease of the lumbosacral spine, history of carpal tunnel syndrome, status post carpal tunnel release of the right wrist in April 2007, and an adjustment disorder with depressed and anxious mood, but she found that Sumner did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 11-18.) The ALJ found that Sumner had the residual functional capacity to perform simple, routine, repetitive, unskilled, light work except that she was limited in pushing and pulling in her upper extremities to the weights she could lift and carry, she could never crawl, she could only occasionally use ramps, climb stairs, balance, kneel, stoop and crouch, and she could not tolerate work around hazardous machinery or at unprotected heights, climbing ladders/ropes/scaffolds or being on vibrating surfaces. (R. at 19-22.) Therefore, the ALJ found that Sumner was unable to perform her past relevant work as an

insurance processor, a clerk or a cashier. (R. at 23.) Based on Sumner's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that a significant number of other jobs existed in the national economy that Sumner could perform, including jobs as a line attendant, a gate attendant and a messenger. (R. at 23-24.) Thus, the ALJ found that Sumner was not under a disability as defined under the Act and was not eligible for benefits. (R. at 24.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

Sumner argues that the ALJ's finding regarding her residual functional capacity is not supported by substantial evidence. (Plaintiff's Brief In Support Of Motion For Summary Judgment, ("Plaintiff's Brief"), at 12-24.) In particular, Sumner argues the ALJ erred by rejecting her treating physician's opinions regarding her inability to return to work. (Plaintiff's Brief at 12-21.) Sumner also argues that the ALJ erred by ignoring the opinions of the state agency psychologists with regard to her work-related mental abilities. (Plaintiff's Brief at 21-24.)

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. The court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided his decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the

ALJ sufficiently explained her findings and her rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays*, 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. §§ 404.1527(d), 416.927(d), if she sufficiently explains her rationale and if the record supports her findings.

The record in this case reveals that Dr. Murray E. Joiner Jr., M.D., treated Sumner from August 2007 through August 2009 for chronic low back pain/spasms, chronic cervicothoracic spasms/pain and lumber degenerative disc disease. (R. at 497-505, 711-12, 756-814.) During the entire time of his treatment, however, Dr. Joiner never placed any limitations on Sumner's work-related activities. It is important to note that Sumner had quit working before beginning treatment with Dr. Joiner on August 14, 2007. (R. at 503.) At the time of his initial evaluation, Dr. Joiner placed no restrictions on Sumner's work-related abilities. (R. at 500-05.) Dr. Joiner's records contain reports regarding Sumner's work status such as:

September 4, 2007: "The patient states she has applied for disability. She states she has not been able to work since October 2006." (R. at 497);

November 5, 2007: "The patient is applying for Social Security Disability." (R. at 812);

April 1, 2008: "The patient has not worked since October 2006. She has applied for disability. She reports she is unable to sit or stand for extended periods." (R. at 809);

November 6, 2008: "The patient is not working at this time. She has applied for Social Security Disability." (R. at 797); and

July 28, 2009: "The patient last worked October 2006." (R. at 759.)

On December 16, 2008, Dr. Joiner noted that Sumner brought "disability forms" into the office. (R. at 792.) He stated that that the forms were completed. (R. at 792.) These forms, however, are not contained in the record. Dr. Joiner also stated: "The patient has been out of work since 2006. Recommend FCE [functional capacity evaluation]." (R. at 792.) The record also contains a Medical Evaluation form from the Department of Social Service, which was completed by Dr. Joiner on August 11, 2009. (R. at 711-12.) On this form, Dr. Joiner checked a box stating that Sumner was "[u]nable to participate in employment and training activities in any capacity at this time." (R. at 711.) Dr. Joiner checked another box that stated that the anticipated duration of incapacity was more than 60 days. (R. at 711.) He wrote, "Pt. has been out of work since Oct. 06." (R. at 711.) The form asked Dr. Joiner to "list any limitations that would affect the patient's ability to participate in

8

employment and training activities." (R. at 712.) Dr. Joiner listed none, but rather stated again "Pt out of work since Oct 06." (R. at 712.)

The issue of disability is an issue reserved for the Commissioner's decision. *See* 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1) (2010). When a physician, even a treating physician, states that a person is disabled without placing any restrictions on the person's work-related activity, the Commissioner may reject that opinion because it is not properly supported by the medical evidence. 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3). The only medical evidence contained in the record with regard to Sumner's physical residual functional capacity are the Physical Residual Functional Capacity Assessment forms completed by the state agency physicians. (R. at 468-72, 610-16.)

On June 19, 2007, Dr. Robert McGuffin, M.D., a state agency physician, stated that Sumner could occasionally lift and carry items weighing up to 20 pounds, frequently lift and carry items weighing up to 10 pounds, stand and walk about six hours in an eight-hour workday and sit about six hours in an eight-hour workday. (R. at 469.) Dr. McGuffin stated that Sumner's ability to push and pull was moderately limited in her left upper extremity. (R. at 469.) He stated that Sumner could occasionally climb ramps, stairs, ladders, ropes and scaffolding, balance, stoop, kneel and crouch and never crawl. (R. at 470.) He further stated that Sumner had not established any manipulative, visual, communicative or environmental limitations. (R. at 470-71.)

On January 30, 2008, Dr. Frank M. Johnson, M.D., another state agency physician, stated that Sumner could occasionally lift and carry items weighing up to 20 pounds, frequently lift and carry items weighing up to 10 pounds, stand and walk about six hours in an eight-hour workday and sit about six hours in an eight-hour workday. (R. at 611.) Dr. Johnson stated that Sumner's ability to push and pull was moderately limited in her left upper extremity. (R. at 611.) He stated that Sumner could occasionally climb ramps, stairs, ladders, ropes and scaffolding, balance, stoop, kneel and crouch and never crawl. (R. at 612.) He further stated that Sumner had not established any manipulative, visual, communicative or environmental limitations. (R. at 612-13.)

These assessments support the ALJ's finding that Sumner was physically capable of performing light work except that she was limited in pushing and pulling in her upper extremities to the weights she could could lift and carry, she could never crawl, she could only occasionally use ramps, climb stairs, balance, kneel, stoop and crouch and she could not tolerate work around hazardous machinery or at unprotected heights, climbing ladders/ropes/scaffold or being on vibrating surfaces.

Sumner also argues that the ALJ erred by ignoring the opinions of the state agency psychologist as to her mental residual functional capacity. The ALJ found that, mentally, Sumner was capable of performing simple, routine, repetitive, unskilled work. On June 20, 2007, E. Hugh Tenison, Ph.D., a state agency psychologist, found that Sumner suffered from an adjustment disorder with depressed and anxious moods. (R. at 478, 480.) Tenison stated that Sumner had

moderate difficulties in maintaining concentration, persistence and pace. (R. at 485.) He also stated that Sumner was moderately limited in her ability to understand, remember and carry out detailed job instructions, to maintain attention and concentration for extended periods, to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, to interact appropriately with the general public and to respond appropriately to changes in the work setting. (R. at 488-89.)

On November 30, 2007, Louis Perrott, Ph.D., a state agency psychologist, found that Sumner suffered from an adjustment disorder with depressed and anxious moods. (R. at 600, 602.) Perrott stated that Sumner had moderate difficulties in maintaining concentration, persistence and pace. (R. at 607.) He also stated that Sumner was moderately limited in her ability to understand, remember and carry out detailed job instructions, to maintain attention and concentration for extended periods, to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, to interact appropriately with the general public and to respond appropriately to changes in the work setting. (R. at 594-95.) Perrott specifically stated that Sumner could perform simple, unskilled work. (R. at 596.)

On January 30, 2008, Howard S. Leizer, Ph.D., a state agency psychologist, found that Sumner suffered from an adjustment disorder with depressed and anxious moods. (R. at 620, 622.) Leizer stated that Sumner had moderate difficulties in maintaining concentration, persistence and pace. (R. at 627.) He also stated that Sumner was moderately limited in her ability to understand, remember and carry out detailed job instructions, to maintain attention and concentration for extended periods, to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, to interact appropriately with the general public and to respond appropriately to changes in the work setting. (R. at 630-31.) Leizer specifically stated that Sumner could perform simple, unskilled work. (R. at 632.)

In reaching his finding as to Sumner's mental residual functional capacity, the ALJ stated that he was giving great weight to the opinions of the state agency psychologists. (R. at 22.) The ALJ's finding mirrors the state agency psychologists' findings that Sumner was capable for performing simple, unskilled work. That being the case, I reject Sumner's argument that the ALJ improperly ignored the opinions of the state agency psychologists.

Based on the above, I find that sufficient evidence exists to support the ALJ's finding with regard to Sumner's residual functional capacity. Therefore, I will recommend that the court deny Sumner's motion for summary judgment, grant

the Commissioner's motion for summary judgment and affirm the Commissioner's finding that Sumner was not disabled.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Substantial evidence exists to support the ALJ's finding with regard to Sumner's residual functional capacity; and

2. Substantial evidence exists to support the ALJ's finding that Sumner was not disabled under the Act.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Sumner's motion for summary judgment, grant the Commissioner's motion for summary judgment and affirm the Commissioner's decision denying benefits.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(C) (West 2006 & Supp. 2010):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as

provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED: February 8, 2011.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE